## OSBORNE et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. January 31, 1927.)

No. 4855.

1. **Criminal law ⊙⟹444—Ordinarily proper foundation is necessary for admission of books of account.**

Ordinarily, before books of account can be received in evidence, a proper foundation must be laid.

2. **Criminal law ⊙⟹434—Corporation's books are ordinarily inadmissible against officers, unless shown accurately kept, or that they had connection therewith justifying inference of acquaintance.**

Unless shown to have been accurately kept, books of a corporation are not ordinarily admissible against its officers and stockholders, in absence of evidence tending to show that they had something to do with the keeping of the books, or had knowledge of their contents, or such connection with the books as to justify an inference of actual acquaintance therewith.

3. **Criminal law ⊙⟹444—Admitting, without full foundation laid, corporation's books against officers, held not error, in view of limited purpose and defendants' resort to some of them.**

Though full foundation was not laid, admission of corporation's books against the two defendants, the only persons substantially interested in the corporations, was not error, in view of the limited purpose for which they were at all material, to show the sale of the same lots to different persons, and the fact that defendants were shown to have resorted to some of the books for ascertaining such facts.

**4. Criminal law ⊚⇒400(8)—Expert may make computations from complicated books of account and state them to jury.**

Where complicated books of account are in evidence and elaborate computations are necessary to determine the results and the amounts evidenced by the books, expert may make such computations and state them to jury.

**5. Witnesses ⊚⇒271(4)—Not requiring witness on cross-examination to point out entries in books of account which he had not made held not abuse of discretion.**

In view of general character of direct examination in which government witness testified that he made entries in some of the books of account in evidence, and the fact that it was apparent from his testimony that he had not made a vast number of the entries, *held* that sustaining objection to inquiry on his cross-examination, asking him to point out the entries in the books which he had not made, was no abuse of discretion.

**6. Post office ⊚⇒49(5)—Statements and representations of defendants' salesmen to purchasers of lots held admissible on prosecution for use of mails to defraud.**

Statements and representations of salesmen of defendants to purchasers of lots *held* admissible on prosecution for use of mails to further scheme to defraud in sales of lots, the evidence warranting finding that such statements and representations were made pursuant to general plan or scheme adopted and sanctioned by defendants.

**7. Criminal law ⊚⇒1169(2)—Because cumulative, admission of evidence held harmless.**

Admission of evidence *held* harmless because cumulative.

**8. Post office ⊚⇒49(5)—Evidence held admissible on prosecution for use of mails to defraud to show defendants' knowledge of methods of their salesmen.**

Evidence on prosecution for use of mails to further fraudulent scheme of sale, that government's witness made investigation of their projects, and found them unsatisfactory, and then had conversations with defendants in relation thereto, *held* admissible to show that information obtained by witness as to methods employed by defendants' agents in making sales had been brought home to defendants.

**9. Witnesses ⊚⇒388(2)—Foundation not being laid for impeachment, exclusion of evidence competent to impeach was not error.**

Complaint may not be made of exclusion of evidence competent for impeachment, where no proper foundation for impeachment was laid.

**10. Criminal law ⊚⇒1169(1)—Admission, on prosecution for use of mails to defraud in sales, of applications for salesmen's licenses, held harmless as immaterial.**

The admission, on prosecution for use of mails to advance scheme to defraud in sale of real estate, of a number of applications for real estate salesmen's licenses, *held* harmless; being immaterial.

**11. Criminal law ⊚⇒684—Admitting on rebuttal evidence admissible in chief, held not abuse of discretion.**

It is not an abuse of discretion to admit on rebuttal evidence that should have been introduced as part of the main case.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Paul J. McCormick, Judge.

John R. Osborne and another were convicted of use of mails to defraud, and bring error. Affirmed.

Le Compte Davis and William B. Beirne, both of Los Angeles, Cal., for plaintiffs in error.

H. L. Arterberry and David H. Cannon, Sp. Asst. Attys. Gen., and Samuel W. McNabb, U. S. Atty., and J. Edwin Simpson, Asst. U. S. Atty., both of Los Angeles, Cal., for the United States.

Before GILBERT and RUDKIN, Circuit Judges, and JAMES, District Judge.

RUDKIN, Circuit Judge. This is a writ of error to review a judgment of conviction under the mail fraud statute. The indictment charged that the plaintiffs in error devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and that certain letters were placed in the mail to execute the scheme and artifice. The false and fraudulent pretenses, representations, and promises related to the sale of sections or lots for burial purposes in Valhalla Memorial Park and Valhalla Mausoleum Park, owned by the plaintiffs in error, or by corporations dominated and controlled by them. While numerous such pretenses, representations and promises are charged and set forth in the indictment, the plaintiffs in error state in their brief that the government conceded at the trial that there were but two vital elements in the case: "(1) The sale of the same sections to different purchasers, or what were termed 'duplications'; and (2) the failure of the defendants to make resales, as contemplated." In view of this concession, and for present purposes, we deem it sufficient to say that the indictment charged that it was a part of the scheme and artifice to defraud that the plaintiffs in error should sell the same numbered lots or sections in Memorial Park or Mausoleum Park to each of two or more persons to be defrauded, as his exclusive property, and without revealing to any

of said persons that the plaintiffs in error had sold the same numbered lots or sections to another or others, and should accept payments on the purchase price of the same numbered lots or sections during the same period of time, from each of two or more of the persons to be defrauded, and that the plaintiffs in error falsely and fraudulently represented and pretended that they would resell said lots and sections so purchased from them by the persons to be defrauded, within a short time after such purchase and with great profit to such persons.

[1] The sufficiency of the indictment, the sufficiency of the evidence to sustain the conviction, and the charge of the court, are not called into question on this writ of error. In other words, all of the assignments of error are based upon rulings of the court, admitting or excluding testimony during the progress of the trial. The first and perhaps the principal assignment of error is based upon the ruling admitting in evidence the books and records of the Osborne-Fitz-Patrick Finance Company. This was the holding company that transacted the business of the two cemetery companies, and, while a corporation in form, the only persons substantially interested therein were the two plaintiffs in error. The objections to this testimony were numerous; the principal ones being that the books were not shown to have been accurately kept, that the books were not shown to be in the same condition as when taken from the possession of the finance company, under a subpoena duces tecum, and that the plaintiffs in error were not shown to have had any knowledge of their contents. Ordinarily, before books of account can be received in evidence, a proper foundation must be laid.

"In order to lay the foundation for the admission of such evidence it must be shown that the books in question are books of account kept in regular course of the business, that the business is of a character in which it is proper or customary to keep such books, that the entries were either original entries or the first permanent entries of the transactions, that they were made at the time, or within reasonable proximity to the time, of the respective transactions, and that the persons making them had personal knowledge of the transactions, or obtained such knowledge from a report regularly made to him by some other person employed in the business whose duty it was to make the same in the regular course of the business." Chan Kiu Sing v. Gordon, 171 Cal. 28, 151 P. 657.

In discussing the same question in Chaffee & Co. v. United States, 18 Wall. 516, 21 L. Ed. 908, the court said:

"And that rule, with some exceptions not including the present case, requires, for the admissibility of the entries, not merely that they shall be contemporaneous with the facts to which they relate, but shall be made by parties having personal knowledge of the facts, and be corroborated by their testimony, if living and accessible, or by proof of their handwriting, if dead or insane, or beyond the reach of the process or commission of the court. The testimony of living witnesses personally cognizant of the facts of which they speak, given under the sanction of an oath in open court, where they may be subjected to cross-examination, affords the greatest security for truth. Their declarations, verbal or written, must, however, sometimes be admitted when they themselves cannot be called, in order to prevent a failure of justice. The admissibility of the declarations is in such cases limited by the necessity upon which it is founded."

[2] Measured by this rule it is quite apparent that a proper foundation was not laid for the admission of all the books and records received in evidence; and, unless shown to have been accurately kept, the books of a corporation are not ordinarily admissible against its officers and stockholders, in the absence of evidence tending to show that they had something to do with the keeping of the books, had knowledge of their contents, or such connection with the books as to justify an inference of actual acquaintance therewith. Worden v. United States (C. C. A.) 204 F. 1; Cullen v. United States (C. C. A.) 2 F.(2d) 524.

[3] It appeared in this case that the books were kept under the general direction of the plaintiffs in error, but they had nothing to do with the actual keeping of the books, and there is little testimony tending to show that they had any knowledge of the contents of all the books, or such connection with all the books as would justify an inference of actual acquaintance therewith. This, however, applies only to a portion of the books admitted in evidence. There was testimony tending to show that the books containing the records of sales of lots or sections were properly and accurately kept, and that they were used by the plaintiffs in error or by their employees under their express direction for the very purpose for which they were used by the Government, namely, for the purpose of ascertaining the lots or sections that had been sold to two or more purchasers. There was also testimony tending to show

that the ledgers were used and resorted to for the same purpose and for the purpose of ascertaining payments made on contracts, the balance due on contracts, and contracts subject to cancellation for default in payment. Indeed, it clearly appears from the record that these books were the only source to which the plaintiffs in error and their employees could resort and did resort for information concerning the manifold activities in which the plaintiffs in error and the finance company were engaged. Furthermore, this case has much in common with Cullen v. United States, supra, where this court said:

"Error is assigned to the admission in evidence of the corporate books to show the receipts and disbursements of the corporation. It is said that it was error to admit such evidence against the defendants Cullen and Dennison without proof that they authorized the entries or had knowledge thereof. Many cases hold that books of a corporation are not admissible in evidence against any officer or stockholder, unless he is shown to have had knowledge of the entries or authorized the same. But the rule applicable to the present case is, we think, that which obtains in regard to the admission of partnership books. Partnership books are evidence against the partners, for the reason that they are their acts and declarations, kept by them or by their authority, or by their servants under their direction and superintendence.

"The defendants Cullen and Dennison were the corporation. They owned the stock, and had entire control and ownership of the corporate property. They were, respectively, president and secretary of the corporation. They passed all the resolutions of the corporation, conducted its correspondence, and managed its activities. They were, in effect, partners operating through the instrumentality of a corporation. That they were acquainted with the contents of their books is a justifiable inference. Under such circumstances there was no error in admitting the evidence."

[4] We think, therefore, in view of the limited purposes for which the books and records were at all material, and the absence of any necessity for technical accuracy as to any particular item or account, there was no error in the admission of the books. What, if any, changes were made in the books after their seizure by the government by the employees of the plaintiffs in error or by public officers was for the jury and not for the court. An expert witness called by the government testified to certain computations taken from the books in evidence, and the admission of this testimony is assigned as error. In so far as the assignment is based on the competency of the books themselves, it has already been disposed of, and, where complicated books of account are in evidence and elaborate computations are necessary to determine the results and the amounts evidenced by the books, the rule is well settled that an expert may be called upon to make such computations and state them to the jury. Cooper v. United States (C. C. A.) 9 F.(2d) 216; Arine v. United States (C. C. A.) 10 F.(2d) 778. While some of the conclusions of the expert may have been improper and immaterial, his conclusions were based on evidence already before the jury, and we fail to see wherein the testimony could be at all prejudicial.

[5] One of the witnesses for the government testified in a general way that he had made entries in certain of the books admitted in evidence, and that he had made no entries in certain others. Upon cross-examination he was asked to point out the particular entries which he had not made in the different books. To this inquiry an objection was sustained. In view of the general character of the direct examination, and in view of the further fact that it was apparent from the testimony that the witness had not made a vast number of the entries in the different books, there was no abuse of discretion in the ruling complained of.

[6] A large number of the purchasers of lots or sections were permitted to testify, over objection, to representations and statements made to them by the salesmen through whom the purchases were made. This testimony was objected to on the ground that it was hearsay and that the statements were not authorized by the plaintiffs in error. If this testimony related to but a single transaction, there would be merit in the objection, but, when we consider the fact that the plaintiffs in error maintained a school for the instruction of salesmen, and issued bulletins and circulars for their guidance, and that the representations made by the different salesmen were in many instances similar in tone and were to some extent at least based upon the statements and information contained in these bulletins and circulars, we think the jury were warranted in finding that the statements and representations complained of were so made pursuant to a general plan or scheme adopted and sanctioned by the plaintiffs in error. Preeman v. United States (C. C. A.) 244 F. 1; Whitehead v. United

States (C. C. A.) 245 F. 385; Pandolfo v. United States (C. C. A.) 286 F. 8; Lathrop v. United States (C. C. A.) 2 F.(2d) 497.

[7, 8] Error is assigned in the admission of certain documents in evidence on the ground that they were hearsay and that the plaintiffs in error were not connected therewith. We think the connection was sufficiently shown, but in any event the testimony was so far cumulative that it could work no prejudice. A witness on the part of the government was permitted to testify that he had made certain investigations concerning the two cemetery projects, that the investigations proved unsatisfactory, and that he had a conversation with each of the plaintiffs in error in relation thereto. The court below admitted the testimony for the sole purpose of showing that the information acquired by the witness as to the methods employed by agents in making sales of lots and sections in the cemeteries had been brought home to the plaintiffs in error, and for that purpose the testimony was competent. Lathrop v. United States, supra.

[9] Inquiry was made of a witness for the plaintiffs in error as to a conversation had with a representative of the Hollywood Cemetery. It is not claimed that the statement made by this representative was competent testimony, but it is sought to justify the admission of the testimony on the ground that it was competent for the purposes of impeachment. In answer to this contention we deem it sufficient to say that no proper foundation for the impeachment was laid.

[10] The admission of a large number of applications for real estate licenses by salesmen were admitted in evidence over objection, and the ruling is assigned as error. We do not see the materiality of these applications, nor can we see how they could aid the one party or prejudice the other.

[11] Error is lastly assigned in the admission of certain testimony in rebuttal; the plaintiffs in error contending that it should have been introduced as part of the main case. Assuming that this contention is well founded, the ruling of the court below was not an abuse of discretion. Austin v. United States (C. C. A.) 4 F.(2d) 774; Marron v. United States (C. C. A.) 8 F.(2d) 251, 257.

After a careful consideration of the testimony admitted over objection and the testimony excluded on objection, we are unable to say that any prejudicial error was committed during the progress of the trial, and the judgment of the court below is therefore affirmed.