## PICKERING *v.* LEIBERMAN.[1]

*(District Court, D. Delaware. January 8, 1890.)*

1. PRINCIPAL AND SURETY—CONTRIBUTION—LACHES.

The equitable right of contribution between sureties having long been recognized as the foundation of an implied contract, and the legal action on such contract being barred after three years, contribution sought by an administrator of a paying surety from a co-surety will be refused in a court of equity after an unaccounted for delay of nearly 18 years.

2. SAME—SUBROGATION.

A delay of nearly 18 years to demand subrogation to the judgment against two sureties by a surety who has discharged the same is laches, and a court of equity will not act.

3. SAME—INSANITY OF CO-SURETY.

The insanity of a surety whose portion of a principal's debt has been paid by a co-surety does not excuse delay on the part of the latter to demand contribution, where a trustee of the lunatic's estate had been appointed, and there was sufficient real estate to pay his debts.

In Equity.

On May 1, 1868, Frederick Myers, as principal, with Henry Moore, Christian Metzyer, and Henry Leiberman, as sureties, executed a distiller's bond to the United States in the penal sum of $3,000. On September 1, 1869, an action of debt was brought on the bond in this court. Moore and Leiberman were the only parties served with summons, the other persons named not being found in the jurisdiction. On October 1, 1871, judgment was entered against Moore and Leiberman, and, to the execution issued thereon, the marshal returned, on January 9, 1872, levied on goods and chattels of Moore as per inventory, etc.; *nulla bona* as to Leiberman; and afterwards, debt, interest, and costs fully paid by Moore. January 12, 1872, a jury, which had been summoned by the sheriff of Kent county, under a writ of *de lunatico inquirendo*, found that Leiberman was then, and had been for the two years preceding, insane; and February 17, 1872, Caleb S. Pennewill was appointed his trustee. Henry Moore died October 31, 1885, and letters of administration *c. t. a.* were issued to Thomas Pickering November 6, 1885. A rule to show cause why the above judgment should not be marked to the use of Moore's administrator was served on Leiberman's trustee, October 2, 1889, and the court was informed that the district attorney is authorized to make the assignment on the record, if it should be so ordered by the court.

---

[1] Reported by Marks Wilkes Collett, Esq., of the Philadelphia bar.

*James Pennewill*, for rule.
*Benj. Nields*, for defendant.

WALES, J., (*after stating the facts as above.*) Several objections are made to the granting of this order, but it will be sufficient to consider that one of them only which is, in the opinion of the court, conclusive, namely, the bar of the statute of limitations. One of two or more sureties, who pays the debt of their principal, is entitled to contribution from each co-surety, and has the right to be subrogated to the original creditor. When the debt is secured by a judgment, the subrogation is ordinarily made by an assignment on the record to the use of the paying surety, and this is one of the modes provided in such cases by the statute of Delaware. The right of contribution is an equitable one, and has long been recognized in law as the foundation of an implied contract between the sureties, and can therefore be sued on, in an action of *assumpsit*, as for money paid for the use of another. Either at law, or in equity, however, the plaintiff must pursue his remedy with diligence, and without unreasonable delay. The legal remedy, being governed by the same rules which apply to actions for the recovery of simple contract debts, must be commenced within the period prescribed by the statute, which begins to run against a claim for contribution from the time of the payment by the surety. *Dodd* v. *Wilson*, 4 Del. Ch. 407; *Neilson* v. *Fry*, 16 Ohio St. 553; Pitm. Sur. 153; Baylies, Sur. 455. Statutory limitations are statutes of repose. They are positive and arbitrary in their operation, and do not depend on presumption of purchase or of payment, but are enacted for the purpose of quieting titles, and preventing the prosecution of claims made long after the transactions which created them. In some cases they may appear to be inconsistent with a perfect standard of justice, but they operate equally, and with such exceptions only as are expressly provided for. "The general rule is," says Mr. Justice BRADLEY, in *Amy* v. *Watertown*, 130 U. S. 324, 9 Sup. Ct. Rep. 537, "that the language of the act must prevail, and no reasons based on apparent inconvenience or hardship can justify a departure from it." Nearly 18 years had elapsed after the rendition of the judgment, and before the present rule was obtained. The long neglect of Mr. Moore to compel a contribution from the estate of Leiberman has not been accounted for, and his administrator has been likewise dilatory, only in a lesser degree. The time for bringing an action on a simple contract, in Delaware, is limited to three years; and viewing the present application in the light of such an action, and as controlled by the same rules, it follows that it must be refused.

It is doubtful whether a court of equity would consider the plaintiff as entitled to be subrogated at this late day. That court looks to the particular facts of the case, and, independently of statutory limitations, does not entertain stale demands. Lord CAMDEN in *Smith* v. *Clay*, 3 Brown, Ch. 640, note, said:

"A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party slept upon his rights and acquiesced for a great length of time. Nothing

can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing; laches and neglect are always discountenanced; and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court."

These words of Lord CAMDEN have been approved and adopted by the supreme court of the United States in *Piatt* v. *Vattier*, 9 Pet. 416, and in *McKnight* v. *Taylor*, 1 How. 161. See, also, *Sullivan* v. *Railroad Co.*, 94 U. S. 811, and *Godden* v. *Kimmell*, 99 U. S. 201.

Leiberman's insanity affords no excuse for the long delay in applying for this rule. The trustee stood in his place, ready to answer all claims; his real estate was sufficient to pay all his debts; and these facts were known to all the parties. The amount which would have originally paid Leiberman's share of the judgment has since doubled by the accumulation of interest, and the allowance of the order now would operate as reward for dilatoriness, and might establish a troublesome precedent for the encouragement of laches. Let the rule be discharged.